# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00036-JAW-1 |
| | ) | |
| ROBERT CLIFFORD | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

A prisoner serving a fifty-seven-month sentence for possession with intent to distribute cocaine moves for compassionate release to home confinement and a modification of sentence under 18 U.S.C. § 3582(c)(1)(A). The Court concludes that although the prisoner's obesity heightens his risk of complications from COVID-19, the seriousness of the prisoner's offense, the danger he poses to the community, the short amount of time he has served, and the need for deterrence preclude his release. The Court dismisses the motion without prejudice.

**I.   PROCEDURAL BACKGROUND**

On December 20, 2019, the Court sentenced Robert Clifford to fifty-seven months of imprisonment, followed by a three-year term of supervised release, no fine, and a $100 special assessment for possession with intent to distribute cocaine, aiding and abetting, in violation of 21 U.S.C. § 841(a)(1). *Min. Entry* (ECF No. 89); *J.* at 1 (ECF No. 90).

On August 25, 2020, Mr. Clifford filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Mot. for Compassionate Release* (ECF No. 104) (*Def.'s Pro Se Mot.*). On September 2, 2020, the Court ordered Mr. Clifford

to show cause as to why the Court should not dismiss his motion without prejudice for failure to satisfy the exhaustion requirement. *Order to Show Cause* (ECF No. 107). On September 25, 2020, Mr. Clifford responded and requested "an enlargement of time 90 days to complete his compassionate release filing." *Resp. to Order to Show Cause* (ECF No. 109). On October 2, 2020, the Court granted Mr. Clifford's request for a ninety-day extension to exhaust his administrative remedies. *Order on Mot. to Extend Time to Complete Compassionate Release Filing* (ECF No. 110). Just three days later, Mr. Clifford responded to the Court's order, attaching a letter from the Bureau of Prisons (BOP) dated July 2, 2020, denying his request for compassionate release. *Evidence of Exhaustion of Administration Remedies* (ECF No. 111). The Court then appointed Mr. Clifford counsel, *Appointment of Counsel & Scheduling Order* (ECF No. 113), and Mr. Clifford moved for an extension of time to file an amended petition for compassionate release, *Mot. to Extend Time to File an Am. Pet. for Compassionate Release* (ECF No. 114), which the Court granted. *Order* (ECF No. 115).

On November 25, 2020, Mr. Clifford filed an amended motion for compassionate release. *Mot. to Amend Pet. for Compassionate Release* (ECF No. 116) (*Def.'s Am. Mot.*). The Government responded in opposition on December 2, 2020. *Gov't's Resp. to Def.'s Req. for Compassionate Release* (ECF No. 118) (*Gov't's Opp'n*). Mr. Clifford replied on December 11, 2020. *Def.'s Reply to the Gov't's Resp.* (ECF No. 126) (*Def.'s Reply*).

## II. FACTUAL BACKGROUND

### A. Criminal History

The Court provides an abridged version of Mr. Clifford's criminal history.[1] Prior to his federal offense, Mr. Clifford had a number of convictions in Maine for unlawful trafficking in scheduled drugs, assault and aggravated assault, disorderly conduct, criminal mischief, criminal trespass, driving with an expired or no driver's license, and speeding. *PSR* ¶¶ 31-39. Some of these crimes deserve a brief discussion.

In 2009, at age nineteen, Mr. Clifford was convicted of unlawful trafficking in scheduled drugs. *Id.* ¶ 33. Maine Drug Enforcement Agency records reflect that in December 2009, two controlled buys from Mr. Clifford took place, where he sold a gram of crack cocaine in both instances. *Id.* Mr. Clifford was arrested on December 10, 2009 and upon booking, police found an additional amount of cocaine on him. *Id.* On February 24, 2010, a state judge sentenced Mr. Clifford to three years of incarceration, all but sixty days suspended, a $400 fine, $120 restitution, and two years of probation. *Id.* Several probation violations were filed, and his probation was revoked twice. *Id.*

In 2011, at age twenty-one, Mr. Clifford was convicted of aggravated assault. *Id.* ¶ 34. South Portland Police Department records show that on July 20, 2011, a victim reported he was assaulted after approaching a man in an "unaggressive

---

[1] The Court draws much of this factual background from Mr. Clifford's Revised Presentence Investigation Report (PSR). *See Restricted U.S. Probation Filing*, Attach. 3, *PSR* (ECF No. 106). At the sentencing hearing, Mr. Clifford confirmed that the contents of the PSR were accurate and correct. *Tr. of Proceedings* at 5:10-14 (ECF No. 96) (*Sentencing Tr.*). The Court relied on the PSR to sentence Mr. Clifford. *Id.*; *Statement of Reasons* at 1 (ECF No. 91).

3

manner" to tell him not to touch his girlfriend, as she advised she was "grabbed" by the man. *Id.* The man and Mr. Clifford responded by attacking the victim. *Id.* Mr. Clifford struck the victim in the face with a baseball bat and hit him several more times, breaking the victim's jaw. *Id.* On March 9, 2012, a state court judge sentenced Mr. Clifford to twenty-four months incarceration, concurrent with his drug trafficking sentence, and $296.64 restitution. *Id.*

In 2014, at age twenty-four, Mr. Clifford was convicted of assault and obstructing report of a crime. *Id.* ¶ 35. Portland Police Department records reflect that the victim heard a window smash and saw Mr. Clifford and six other men walk away from the victim's vehicle. *Id.* The victim tried to call 911, but Mr. Clifford knocked the phone out of his hand and punched him in the mouth. *Id.* Mr. Clifford again punched the victim in the face and threatened to kill him. *Id.* The victim reported he was able to escape when he grabbed his pistol to defend himself. *Id.* On September 17, 2014, a state court judge sentenced Mr. Clifford to seven days incarceration and a $300 fine. *Id.*

In 2015, at age twenty-five, Mr. Clifford was convicted of criminal mischief. *Id.* ¶ 36. Portland Police Department records show that Mr. Clifford was looking for his girlfriend at her friend's house. *Id.* When he was told to go away, he became angry, yelled loudly, and damaged the neighbor's car before running away. *Id.* On June 23, 2016, a state court judge sentenced Mr. Clifford to a $250 fine and $723.77 restitution. *Id.*

### B. Offense Conduct

Turning to Mr. Clifford's federal offense, on January 22, 2019 at approximately 1:00 a.m., a Maine State Police trooper stopped a car driven by co-defendant Minnolta Chhay with Mr. Clifford in the passenger seat in Scarborough, Maine. *Id.* ¶¶ 9-10. During the traffic stop, the trooper conducted a pat-down of Mr. Clifford and felt a large brick-like object in his underwear. *Id.* ¶11. A field test indicated that the brick package was presumptively positive for cocaine, and a subsequent laboratory analysis confirmed it contained 335.5 grams of cocaine. *Id.* ¶¶ 11, 13. An investigation by the United States Drug Enforcement Agency and Maine State Police revealed that Ms. Chhay and Mr. Clifford traveled to New York together to pick up cocaine at least twice for the same purpose; the first trip was in December 2018, and the details of the December trip were identical to the January trip. *Id.* ¶ 12. Because the details were identical, the Probation Office included 300 grams of cocaine in the December 2018 transaction, making Mr. Clifford responsible for the intent to distribute approximately 635.5 grams of powder cocaine. *Id.* ¶ 14.

### C. Guideline Calculations

As a result of his criminal history and offense conduct, the Court determined that Mr. Clifford was a Criminal History Category IV with a Total Offense Level of 21. *Statement of Reasons* at 1. The applicable sentencing guideline range was fifty-seven to seventy-one months imprisonment, three years of supervised release, a fine between $15,000 and $1,000,000, and a special assessment of $100. *Id.* The Court sentenced Mr. Clifford at the low-end of the guideline range to fifty-seven months of

incarceration, three years of supervised release, no fine, and the $100 special assessment. *J*. at 2-7.

### III. THE PARTIES' POSITIONS

#### A. Robert Clifford's Amended Motion

Pursuant to 18 U.S.C. § 3582, Mr. Clifford asks the Court to "modify his sentence and immediately release him to home confinement and a period of supervised release due to extraordinary and compelling reasons." *Def.'s Am. Mot.* at 1. He states that his prison, FCI Schuylkill, is "ill-equipped to contain the pandemic" and he is "held in close quarters with other inmates." *Id.* at 2. As a result, it is "simply impossible" for Mr. Clifford to socially distance and follow other recommendations by the Centers for Disease Control and Prevention (CDC). *Id.*

He next points to his physical ailments, such as "preexisting medical issues dealing with his overweight condition and two surgeries for his swollen lymph nodes as a child" and "respiratory issues, for which he was given an inhaler as a child." *Id.* at 2-3. He claims that "[t]hese medical conditions individually and especially combined, make him immunocompromised, putting Mr. Clifford at high risk for contracting the COVID-19 virus, given the aforementioned description of shared space at FCI Schuylkill." *Id.* at 3. He also suffers from undiagnosed anxiety and depression, worsened by the COVID-19 pandemic. *Id.* Furthermore, "the spread and presence of the COVID-19 virus in Maine poses a much lesser threat to those who are considered a health risk for contracting the virus" when compared with the conditions in prison. *Id.*

Turning to the 18 U.S.C. § 3553(a) factors and whether he poses a danger to the community, Mr. Clifford cites the PSR, which recounts a home visit in February 2019, where "[n]o weapons, safety concerns, or contraband were observed in the residence, although there was alcohol in the home." *Id.* at 4 (citing *PSR* ¶ 47). He also states he was incarcerated for possession with intent to distribute cocaine, aiding and abetting, and that crime "is recorded as not involving any identifiable victims." *Id.* (citing *PSR* ¶ 15). If released, Mr. Clifford would live at his mother's home in Portland, Maine, and "[u]nder the supervision of his mother, with the support system of his daughter's mother, Mr. Clifford can regain his job at Hannaford, and continue working towards being a member of the community that is consistent with the support system available to him . . .." *Id.* at 5.

### B. The Government's Opposition

The Government opposes Mr. Clifford's motion "because he poses a danger to the public and the 3553(a) factors do not weigh in favor of his release." *Gov't's Opp'n* at 11. The Government first outlines the BOP's response to the COVID-19 pandemic, including social distancing modifications in certain residential programs, screening newly arriving inmates, restricting contractor access, and limiting social and legal visits. *Id.* at 2-5. "Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution." *Id.* at 5. "Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead," but the BOP must weigh this against other "critical

7

considerations." *Id.* The Government notes that at the time of writing, FCI Schuylkill had no active cases. *Id.* at 6.

The Government "concedes that [Mr. Clifford] offers an 'extraordinary and compelling reason' warranting compassionate release because of his obesity," but does not address his other purported health issues because "they do not rise to the level of a 'serious physical or medical condition' for the purpose of an 'extraordinary or compelling reason.'" *Id.* at 9; *id.* at 9 n.7. Despite its concession, however, the Government "does not concede that his obesity makes it more likely that [he] will contract COVID-19 at Schuylkill FCI," especially given that there are no active cases at the prison and the BOP has taken steps to control the spread of COVID-19 in its facilities. *Id.* at 10.

The Government next considers Mr. Clifford's danger to the community and the § 3553(a) factors together, concluding that "they demonstrate that [he] poses a serious danger to the community if released." *Id.* The Government points to Mr. Clifford's criminal record, his lack of compliance on probation and federal pre-trial release, the fact he was found responsible for a large amount of cocaine, his repeated drug crimes and violent felony assault, the fact he has only served twenty-four percent of his sentence, and the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *Id.* at 10-11.

### C. Robert Clifford's Reply

In Mr. Clifford's two-page reply, he commends the BOP's attempts to control the current outbreak of COVID-19, but asserts that "in spite of the affirmative steps

taken by the government to control the virus, [he] is nevertheless unreasonably exposed to the virus on a daily basis and such exposure is far greater than any exposure he would experience while living at home with his mother, in Portland Maine." *Def.'s Reply* at 1. Specifically, Mr. Clifford points to a "drastic increase" in cases at FCI Schuylkill, noting that there are now six positive staff and eighty-nine positive inmates. *Id.* at 1-2. Mr. Clifford also addresses the Government's argument that he poses a danger to the public, asserting that he was convicted for "a non-violent drug offense" and since he has been incarcerated, he "has had no violent or nonviolent disciplinary incidents and has complied with all the institutional rules." *Id.* at 2.

## IV.   LEGAL STANDARD

Over the course of the COVID-19 pandemic, the Court addressed the legal standard for deciding a motion for compassionate release on several occasions. *See, e.g., United States v. Crosby*, 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)", and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . .." 18 U.S.C. § 3582(c)(1)(A).[2]

---

[2] Section 1B1.13 of the United States Sentencing Commission Guidelines addresses reductions in the terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A). But the Commission promulgated these provisions before Congress enacted the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 230-34 (2d Cir. 2020) (discussing the history of § 1B1.13 and the First Step Act). As Judge Hornby of this District noted, the "Second, Fourth, Sixth and Seventh Circuits have . . . ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and nothing limits judges' discretion in considering 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Almeida*, Nos. 2:17-cr-52-DBH-01, 2:11-cr-127-

The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[3] This policy statement requires that the movant must meet the "requirements of subdivision (2)," which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018) (U.S.S.G). Section 3142(g) sets forth four factors that a court must consider before releasing a person pending trial. They include: (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

---

DBH-01, 2021 U.S. Dist. LEXIS 364, at *4 (D. Me. Jan. 4, 2021) (quoting *Brooker*, 976 F.3d at 235-37 and citing *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)); *see United States v. Gowdy*, No. 20-60800 Summary Calendar, 2020 U.S. App. LEXIS 40409, at *3 (5th Cir. Dec. 28, 2020) (describing whether § 1B1.13 applies to motions for compassionate release as an "open question"); *United States v. Pelloquin*, No. 20-12818-DD, 2020 U.S. App. LEXIS 39966, at *4 (11th Cir. Dec. 21, 2020) (characterizing the issue as "not frivolous").

[3]    As the Court has previously discussed, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act; its provisions are therefore not directly related to the unique circumstances presented by a global pandemic. Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. Similarly, Judge Hornby of this district has ruled that this policy statement "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'" *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)). The Court agrees.

The policy statement also provides criteria for determining whether "extraordinary and compelling reasons" exist to release the defendant. U.S.S.G. § 1B1.13 cmt. n.1. These reasons include certain enumerated terminal illnesses and similar conditions, physical, functional, mental, or cognitive impairments, age, family circumstances, and other unenumerated reasons. *Id.* § 1B1.13 cmt. n.1 (A-D). The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* § 1B1.13 cmt. n.2. Finally, it states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* cmt. n.3.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

## V.   DISCUSSION[4]

The Court reviewed Mr. Clifford's amended motion along with the Government's response and the applicable law. The Court concludes that Mr. Clifford's obesity, combined with the risks posed by the COVID-19 pandemic,

---

[4]    18 U.S.C. § 3582(c)(1)(A) contains a mandatory claim processing rule, which bars some compassionate release motions as untimely. *See Crosby*, 2020 U.S. Dist. LEXIS 199085, at *17 (citing *United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *3 (D. Me. Apr. 10, 2020)). The Government "concedes that [Mr. Clifford] has exhausted his administrative remedy by submitting a request for reduction in sentence to the warden and receiving a denial." *Gov't's Opp'n* at 8 n.6. The Court agrees.

11

favors his release. However, the Court concludes that other considerations make it improper to release Mr. Clifford. Here, given Mr. Clifford's criminal history and the nature of his current offense, the need to protect the public, the short time he has served in relation to his fifty-seven-month sentence, and the need for the sentence imposed to deter him and others similarly situated tip the scales against release.

### A. Extraordinary and Compelling Reasons

To grant Mr. Clifford's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. According to the Centers for Disease Control and Prevention (CDC), there are several factors that increase a person's risk of severe illness from COVID-19. Arguably, the most decisive factor is a person's age. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Jan. 20, 2021). Generally, the risk of COVID-19 increases as a person ages, and over eighty percent of deaths occur in people who are sixty-five or older. *Id.* However, people younger than sixty-five may still face high risk of complications. *Id.* Fortunately, at age thirty, Mr. Clifford does not fit within the age-related high-risk category.

People with certain medical conditions are also at high risk of serious complications. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 20, 2021). According to the CDC, obesity is one of several conditions that place a person at an increased risk of serious

complications from COVID-19. *Id.* The CDC defines "obesity" as a body mass index (BMI) of more than 30 and less than 40 kg/m² and "severe obesity" as a BMI of more than 40 kg/m². *Id.* In terms of risk of severe illness from COVID-19, the CDC does not differentiate between obesity and severe obesity.

The Government "concedes that [Mr. Clifford] offers an 'extraordinary and compelling reason' warranting compassionate release because of his obesity." *Gov't's Opp'n* at 9. Mr. Clifford does not provide any medical records, but cites the PSR, which states he "stands 6'1" tall and weighs 280 pounds." *Def.'s Am. Mot.* at 2-3; *PSR* ¶ 48. By the Court's calculation, this puts Mr. Clifford's BMI at 36.9 (127kg/1.8542m² = 36.94). This makes Mr. Clifford "obese" under the CDC's definition, and places him at an increased risk of serious complications from COVID-19, should he contract the virus. The Court notes, however, that the PSR was prepared over one year ago on September 23, 2019, and Mr. Clifford has not supplied any medical records updating his weight since then.

Mr. Clifford also points to other conditions, such as "two surgeries for his swollen lymph nodes as a child" and "respiratory issues, for which he was given an inhaler as a child." *Def.'s Am. Mot.* at 2-3. The Court agrees with the Government that on the record before it, these conditions do not rise to the level of "extraordinary and compelling." *See Gov't's Opp'n* at 9 n.7. Mr. Clifford does not provide any medical records and the PSR merely states that "[Mr.] Clifford noted he was sick as an infant, having two surgeries for swollen lymph nodes, though he has had no subsequent issues." *PSR* ¶ 49. The PSR does not mention any respiratory issues, but in his pro

13

se motion, Mr. Clifford states he has had "respiratory problems since a child which [he] was given an inhaler for." *Def.'s Pro Se Mot.* at 1. The CDC states that someone with "asthma (moderate-to-severe)" "might be at an increased risk" for severe illness. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 20, 2021). Without any further information, though, the Court cannot determine whether Mr. Clifford has asthma, or if so, how severe it is. Nevertheless, accepting the Government's concession regarding Mr. Clifford's obesity, the Court concludes that Mr. Clifford has shown that he is at an increased risk of serious complications should he contract COVID-19.

While it concedes that Mr. Clifford's obesity is an "extraordinary and compelling reason" warranting compassionate release, "the Government does not concede that his obesity makes it more likely that [he] will contract COVID-19 at Schuylkill FCI." *Gov't's Opp'n* at 10. Located in Minersville, Pennsylvania, FCI Schuylkill houses 877 male offenders. *FCI Schuylkill*, BOP, https://www.bop.gov/locations/institutions/sch/ (last visited Jan. 20, 2021). At the time of its opposition on December 2, 2020, the Government reported there were no active COVID-19 cases at FCI Schuylkill. *Gov't's Opp'n* at 10. On December 11, 2020, Mr. Clifford noted that the BOP was reporting eighty-nine inmates and six staff had tested positive. *Def.'s Reply* at 2-3. As of today, there are eighty-one positive inmates and fourteen positive staff. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 20, 2021). One hundred seventy-

14

one inmates and five staff have recovered. *Id.* Fortunately, no one has died. *Id.* This places FCI Schuylkill within the top twenty of all BOP institutions in terms of positive cases. *Id.*

FCI Schuylkill is in the midst of an outbreak. Despite the best efforts of the BOP, the prison went from zero cases to eighty-nine in a matter of weeks. Furthermore, Mr. Clifford stated there were eighty-nine positive inmates on December 11, 2020 and today there are eighty-one positive inmates, suggesting that over a month later the outbreak is still not fully under control. The Court recognizes that it is difficult for Mr. Clifford to socially distance and take other precautions while he is incarcerated in federal prison. In light of the Government's concession, the Court concludes that Mr. Clifford's obesity, coupled with the current outbreak at FCI Schuylkill, is an "extraordinary and compelling" reason warranting release and will consider whether the other factors weigh against release.

### B.   Danger to the Community

Notwithstanding any extraordinary and compelling reasons for Mr. Clifford's release, the Court concludes Mr. Clifford is a danger to the community and will not release him. The Court primarily rests this finding on two considerations. First, Mr. Clifford's offense of conviction. 18 U.S.C. § 3142(g) instructs a court should consider "the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance." Mr. Clifford argues his that his crime of possession with intent to distribute cocaine, aiding and abetting, is "a non-violent drug offense" and a victimless crime, pointing the to the PSR which states "[t]his is a

15

Title 21 offense and there is no identifiable victim." *Def.'s Am. Mot.* at 4 (citing *PSR* ¶ 15).

The Court agrees that the legal definition of "victim" does not include the addicts who were the presumed recipients of the large shipment of cocaine Mr. Clifford was bringing from New York to Maine. But this takes Mr. Clifford only so far. While there may be no victim for purposes of restitution or for notice under the Justice for All Act, it does not follow the crime of possession of large quantities of cocaine for distribution is not harmful to the public. To the contrary, as the Court remarked to Mr. Clifford at his sentencing hearing, "[c]ocaine, as the defendant's own life reflects, is highly addictive and destructive to people" and addicts "are willing to change their lives and do disgraceful things and bad things to other people . . . in order to feed their addiction." *Tr. of Proceedings* at 39:17-40:1 (ECF No. 96) (*Sentencing Tr.*). While Mr. Clifford was not at the top of the drug conspiracy pyramid, he was not at the bottom—he admitted responsibility for 635.5 grams of cocaine, worth over $60,000, from just two trips in one month, showing he was "at the very least, in the business of transporting cocaine." *Id.* at 40:4-8, 38:12-19.

Second, as the Court will expand upon in the next section, Mr. Clifford's lengthy and violent criminal history further informs the Court's dangerousness finding. He has a prior drug trafficking conviction involving crack cocaine that resulted in a period of incarceration. He also has five separate assault or criminal mischief convictions, including an aggravated assault when he hit someone's face

16

with a baseball bat. He had probation revoked multiple times and repeatedly failed to comply with terms of pretrial release.

Mr. Clifford reports that since he has been incarcerated, he "has had no violent or nonviolent disciplinary incidents and has complied with all institutional rules." *Def.'s Reply* at 2. The Court commends Mr. Clifford's efforts at rehabilitation and encourages him to continue. However, at this time, Mr. Clifford afforded the Court no grounds on which the Court may conclude that releasing him would not jeopardize the public safety. Thus, the Court concludes that Mr. Clifford is a danger to the community and releasing him would contravene 18 U.S.C. § 3142(g).

### C. The Section 3553(a) Factors

The Court concludes that the § 3553(a) factors also weigh against release. Among "the factors set forth in [18 U.S.C. §] 3553(a)," *see* 18 U.S.C. § 3582(c)(1)(A), are the need for specific and general deterrence. The Court earlier described Mr. Clifford's criminal history and his persistent criminal conduct leading up to his commission of this federal offense. The Court remains concerned that even after being convicted in 2009 of unlawful trafficking in crack cocaine, after serving a two-month sentence, and after multiple violations of his state probation, leading to further periods of incarceration, Mr. Clifford would continue to distribute large quantities of cocaine, leading to this federal conviction and sentence.

In addition to his cocaine trafficking, Mr. Clifford has a wild and violent side, which seems to appear when he is under the influence of alcohol. In December 2011, he took a baseball bat to someone's face, fracturing his jaw and was sentenced to

17

twenty-four months in prison. Within six months of being released from prison on October 3, 2013, Mr. Clifford punched someone in the face on March 14, 2014 and was sentenced again to jail and fined. In December 2014, Mr. Clifford became irate and caused over $700 in damage to someone's motor vehicle. Then on April 30, 2017, Mr. Clifford was intoxicated, walking in traffic, and trying to pick fights with people.

This federal offense confirms that by December 2018, Mr. Clifford was back associating with drug dealers and assisting them in the transportation of huge quantities of cocaine into the state of Maine. It seems clear to the Court that Mr. Clifford must receive a message that his continued criminal conduct will not be tolerated, regardless of whether he commits crimes because he is intoxicated or under the influence and cannot control himself, or because his addictions lead him to assisting major drug dealers bringing highly addictive illegal drugs into his home state. In short, the Court is of the view that Mr. Clifford must serve a sentence long enough to deter his own future criminal conduct.

Typically, the notion of general deterrence from an individual sentence is more theoretical than practical. However, where a defendant is a member of a criminal subset, such as a drug trafficking organization, the impact of a single sentence sends ripples throughout that community and may deter future criminal conduct. If Mr. Clifford's associates find him out on the street, having served only a small percentage of his actual sentence, the deterrent effect of his sentence will dissipate.

Regarding the remaining § 3553(a) factors, when the Court sentenced Mr. Clifford just over one year ago it imposed a sentence that was "sufficient but no

greater than necessary" at the low-end of the guideline range. *Sentencing Tr.* at 34:22-40:22. The Court has reviewed its prior determination and reaffirms in full. The Court received no new information that would alter its reasoning. The Court only adds that Mr. Clifford has served about a quarter of his fifty-seven-month sentence. Release at this point would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate specific and general deterrence.

## VI.   CONCLUSION

The Court DISMISSES Robert Clifford's Motion to Amend Petition for Compassionate Release (ECF No. 116) without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of January, 2021